# EXHIBIT A

Table of Contents

# UNITED STATES SECURITIES AND EXCHANGE COMMISSION
Washington, DC 20549

# FORM 10-K

(Mark One)

☒ **Annual Report Pursuant to Section 13 or 15 (d) of the Securities Exchange Act of 1934**

    **For the fiscal year ended <u>December 27, 2008</u>**

or

☐ **Transition Report Pursuant to Section 13 or 15 (d) of the Securities Exchange Act of 1934**

    **For the transition period from _____ to _____**

Commission file number <u>1-10948</u>

# Office Depot, Inc.
(Exact name of registrant as specified in its charter)

## Office DEPOT

| | |
|---|---|
| **Delaware** | **59-2663954** |
| (State or other jurisdiction of | (I.R.S. Employer |
| incorporation or organization) | Identification No.) |
| **6600 North Military Trail, Boca Raton, Florida** | **33496** |
| (Address of principal executive offices) | (Zip Code) |

**(561) 438-4800**
(Registrant's telephone number, including area code)
Securities registered pursuant to Section 12(b) of the Act:

| Title of each class | Name of each exchange on which registered |
|---|---|
| Common Stock, par value $0.01 per share | New York Stock Exchange |

Securities registered pursuant to Section 12(g) of the Act: None

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act. Yes ☑ No ☐

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or 15(d) of the Act. Yes ☐ No ☑

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports) and (2) has been subject to such filing requirements for the past 90 days: Yes ☑ No ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K. ☑

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, or a smaller reporting company. See the definitions of "large accelerated filer," "accelerated filer" and "smaller reporting company" in Rule 12b-2 of the Exchange Act. (Check one):

Large accelerated filer ☑    Accelerated filer ☐    Non-accelerated filer ☐    Smaller reporting company ☐
(Do not check if a smaller reporting company)

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Act). Yes ☐ No ☑

The aggregate market value of voting stock held by non-affiliates of the registrant as of June 28, 2008 (based on the closing market price on the Composite Tape on June 27, 2008) was approximately $3,010,635,490 (determined by subtracting from the number of

shares outstanding on that date the number of shares held by affiliates of Office Depot, Inc.).

The number of shares outstanding of the registrant's common stock, as of the latest practicable date: At January 24, 2009, there were 274,832,415 outstanding shares of Office Depot, Inc. Common Stock, $0.01 par value.

Documents Incorporated by Reference:

Certain information required for Part III of this Annual Report on Form 10-K is incorporated by reference to the Office Depot, Inc. definitive Proxy Statement for its 2009 Annual Meeting of Shareholders, which shall be filed with the Securities and Exchange Commission pursuant to Regulation 14A of the Securities Act of 1934, as amended, within 120 days of Office Depot, Inc.'s fiscal year end.

**Table of Contents**

DCs

| State/Country | # | State/Country | # |
|---|---|---|---|
| **UNITED STATES:** | | BELGIUM | 1 |
| Arizona | 1 | CHINA | 7 |
| California | 2 | CZECH REPUBLIC | 1 |
| Colorado | 1 | FRANCE | 5 |
| Florida | 2 | GERMANY | 2 |
| Georgia | 1 | INDIA | 11 |
| Illinois | 1 | IRELAND | 1 |
| Maryland | 1 | ISRAEL | 1 |
| Massachusetts | 1 | ITALY | 1 |
| Michigan | 1 | JAPAN | 1 |
| Minnesota | 1 | SOUTH KOREA | 1 |
| New Jersey | 1 | SPAIN | 1 |
| North Carolina | 1 | SWEDEN | 4 |
| Ohio | 1 | SWITZERLAND | 1 |
| Texas | 2 | THE NETHERLANDS | 1 |
| Washington | 1 | UNITED KINGDOM | 4 |
| | | | |
| **CANADA:** | | | |
| Ontario | 1 | | |
| TOTAL UNITED STATES & CANADA | 19 | TOTAL OUTSIDE NORTH AMERICA | 43 |

Although our distribution centers in Utah and Louisiana were not closed as of January 24, 2009, we were no longer receiving goods from suppliers or shipping goods to customers at these locations on that date. As discussed in MD&A, we plan to close these two distribution centers, along with three others in North America, during 2009. We also plan to close one distribution center in Europe during 2009.

In addition to the properties identified in the tables above, we operate 12 crossdock facilities in the United States. Generally, these facilities serve as centralized same-day distribution facilities where bulk shipments are brought in, broken into smaller quantities and shipped to retail stores needing supply. As discussed in MD&A, we plan to close one crossdock facility in North America during 2009.

Our corporate offices in Boca Raton, Florida consist of approximately 600,000 square feet of office space in three interconnected buildings. This facility is being leased over 15 years with certain renewal options. This lease is accounted for as a capital lease. We also own a corporate office in Venlo, the Netherlands which is approximately 226,000 square feet in size, and a systems data center in Charlotte, North Carolina which is approximately 53,000 square feet in size.

Although we own a small number of our retail store locations and several of our European distribution centers, most of our facilities are leased or subleased, with initial lease terms expiring in various years through 2032.

**Item 3. Legal Proceedings.**

We are involved in litigation arising in the normal course of our business. While, from time to time, claims are asserted that make demands for a large sum of money (including, from time to time, actions which are asserted to be maintainable as class action suits), we do not believe that any of these matters, either individually or in the aggregate, will materially affect our financial position or the results of our operations.

As previously disclosed, the company continues to cooperate with the SEC in its formal order of investigation issued in January 2008 covering the matters previously subject to the informal inquiry that commenced July 2007. A formal order of investigation allows the SEC to subpoena witnesses, books, records, and other relevant documents. The matters subject to the investigation include contacts and communications with financial analysts, inventory receipt and reserves, timing of vendor payments, certain intercompany loans, certain payments to foreign officials, inventory obsolescence and timing and recognition of vendor program funds.

15

**Table of Contents**

In early November 2007, two putative class action lawsuits were filed against the Company and certain of its executive officers alleging violations of the Securities Exchange Act of 1934. In addition, two putative shareholder derivative actions were filed against the Company and its directors alleging various state law claims including breach of fiduciary duty. The allegations in all four lawsuits primarily relate to the accounting for vendor program funds. Each of the above-referenced lawsuits was filed in the Southern District of Florida, and is captioned as follows: (1) Nichols v. Office Depot, Inc., Steve Odland and Patricia McKay filed on November 6, 2007; (2) Sheet Metal Worker Local 28 Pension Fund v. Office Depot, Inc., Steve Odland and Patricia McKay filed on November 5, 2007; (3) Marin, derivatively, on behalf of Office Depot, Inc. v. Office Depot, Inc., Steve Odland, Neil R. Austrian, David W. Bernauer, Abelardo E. Bru, Marsha J. Evans, David I. Fuente, Brenda J. Gaines, Myra M. Hart, Kathleen Mason, Michael J. Myers, and Office Depot, Inc. filed on November 8, 2007; and (4) Mason, derivatively, on behalf of Office Depot, Inc. v. Steve Odland, Neil R. Austrian, David W. Bernauer, Abelardo E. Bru, Marsha J. Evans, David I. Fuente, Brenda J. Gaines, Myra M. Hart, Kathleen Mason, Michael J. Myers, and Office Depot, Inc. filed on November 8, 2007.

On March 21, 2008, the court in the Southern District of Florida entered an Order consolidating the class action lawsuits and an Order consolidating the derivative actions. Lead plaintiff in the consolidated class actions, the New Mexico Educational Retirement Board, filed its Consolidated Amended Complaint on July 2, 2008. On September 2, 2008, Office Depot filed a motion to dismiss the Consolidated Amended Complaint on the basis that it fails to state a claim, which remains pending. We are still awaiting an amended complaint in the derivative action. We plan to vigorously defend both the consolidated class action and the consolidated derivative action, which are in their early stages.

As part of a normal process of doing business with federal, local and state governmental agencies, we are subject to audits and reviews of our governmental contracts. Many of these audits and reviews are resolved without incident, however we have had several highly publicized inquiries by certain state agencies into contract pricing, and additional state inquiries may follow. We currently do not anticipate that this will have a material effect on our business. We are currently cooperating with the Florida and Missouri Attorneys General with respect to civil investigations regarding our pricing practices that relate primarily to government customers. We first became aware of the Florida matter in the second quarter of 2008 and the Missouri matter in the first quarter of 2009. We are also cooperating with the U.S. Department of Defense ("DOD"), the Department of Education, and the General Services Administration ("GSA") with respect to their joint investigations that are being conducted in coordination with the Department of Justice regarding our pricing practices that relate to sales to certain federal agencies. We first became aware of the GSA matter on December 29, 2008, the DOD matter on January 20, 2009 and the Department of Education matter on February 19, 2009. No claim for relief has been made in any of these matters and management cannot predict their ultimate outcome.

**Item 4. Submission of Matters to a Vote of Security Holders.**

None.

16